Lister v. Newark Plank Road Co.

ALFRED LISTER AND EDWIN LISTER

*v.*

THE NEWARK PLANK ROAD COMPANY.

1. The right of the public to use the navigable waters of the state for the purposes of navigation, is a right given by nature, and can only be taken away by legislation.

2. Except so far as congress may see fit to interfere for the regulation of commerce, each state has exclusive jurisdiction over the navigable waters lying within its territorial limits, and may pass such laws regulating their use as to it may seem wise.

3. The statute of 1874 (*Rev. p. 87 § 13*), providing that navigation in certain cases may be obstructed, does not authorize the owners of a bridge over a navigable stream to close the draw of their bridge so as to entirely stop navigation, unless the work required to be done to their bridge is of a nature or character which cannot be done properly and with reasonable dispatch with the draw open.

4. Which means of travel—the highway across the stream, or highway up and down rhe stream—is to be preferred, is a question which can only be decided by the legislature.

On application for injunction, heard on bill and affidavits and answering affidavits on the part of the defendants.

*Mr. Andrew Kirkpatrick* and *Mr. F. H. Teese,* for complainants.

*Mr. William H. Bradley,* for defendants.

VAN FLEET, V. C.

The defendants, under legislative authority, have constructed a bridge over the Passaic river, at Newark. It forms a part of their line of plank road extending from Newark to a point opposite the city of New York, in the county of Hudson. As directed by the act under which it was built, the bridge is constructed with a draw for the passage of vessels up and down the river. The bridge needs repairs, and the defendants claim that they cannot be properly and expeditiously made unless the draw is kept in one position while the repairs are in progress. They have given public notice that they intend to close the draw and keep it closed until the repairs are completed. The complainants own a dock on the river, and are engaged in the manufacture of fertilizers at a point near where their dock is located. They employ four hundred men. They own three iron steamers, which they use in transporting their manufactured goods to the city of New York, and in bringing back raw material to their works. They show that they must have fresh supplies of raw material daily or their business must stop. During the period the draw is closed they cannot use their steamers. They ask to have the defendants enjoined from closing it.

The complainants do not claim that what the defendants threaten to do will deprive them of any right which they hold by virtue of a federal law. They do not allege that their vessels are enrolled and licensed under the acts of congress regulat-

Lister *v.* Newark Plank Road Co.

ing navigation, and therefore have a right, at all times, of free passage over any of the navigable waters of the United States, but they base their right to the judicial action they seek solely on the ground that what the defendants threaten to do is unauthorized. The Passaic river is a public highway, over which the complainants have a right, at all times, to navigate their vessels, free from all obstructions except such as the legislature may have authorized to be placed therein. The right of the public to use the navigable waters of the state, for the purposes of navigation, is a right given by nature, and is said to exist of common right, or by common law, and can only be taken away by legislation. Except so far as congress may see fit to interfere for the regulation of commerce, each state has exclusive jurisdiction over the navigable waters lying within its territorial limits, and may pass such laws regulating their use as to it may seem wise.

It will thus be seen that the material question presented by this application is, Have the defendants legislative authority for what they declare they intend to do? They have given public notice that they intend to close the draw of their bridge, and to keep it closed for the space of four days or more. With the draw closed, navigation beyond their bridge, either way, will be effectually closed. If the defendants are without authority of law for what they threaten to do, their act will deprive the complainants of a clear and important legal right, and the loss they will in consequence sustain is, according to the undisputed facts of the case, clearly of the kind usually denominated irreparable. It is not disputed that the defendants' bridge needs repairs, and it will be assumed, for present purposes, that during the period the repairs are in progress it will be necessary that the draw should be kept in a fixed position, either open or closed.

The defendants were chartered in 1849. *P. L. of 1849 p. 105.* They were authorized to establish a ferry on the Passaic river, and for that purpose they were authorized to build piers and other necessary works in the river, provided that the free and uninterrupted navigation of the river was not in any manner whatever obstructed. They were expressly prohibited from building a bridge. In 1855, by a supplement to their charter,

they were authorized to construct a bridge, but it is expressly provided that the bridge shall have a draw, with two openings of sixty-five feet each in width, for the free passage of vessels up and down the river. It is further provided that the defendants shall keep a careful person at the bridge to open the draw for the free passage of vessels, and the defendants are also made liable for both penalty and damages in case this duty shall be neglected or disregarded. *P. L. of 1855 p. 353.* So far the purpose of the legislature is very plain. They meant that the navigation of the river should at all times remain open and free, and that the privileges granted to the defendants should be held in subordination to the right of free navigation.

In 1874, the legislature by a general law declared that whenever it shall be necessary to repair or rebuild any bridge over a navigable stream in this state, the person so repairing or rebuilding shall not be liable for damages occasioned by obstructing or stopping navigation thereby, provided that the repairing or rebuilding be done between certain dates, and the notice prescribed by the statute be given. *Rev. p. 87 § 13.* This act, it will be observed, does not by express words authorize navigation to be obstructed; it simply says that if in a certain contingency navigation be obstructed, the person guilty of creating the obstruction shall not be liable for the legal consequences of his act. It does not authorize the wrong, but merely relieves the person committing it from its ordinary legal consequences.

But suppose it be granted that that has been done by indirection, which in such a matter should be done in the most straightforward manner; suppose we say that this statute, by implication gives authority to obstruct navigation, then the question is presented, when and under what circumstances may this authority be exercised? The statute must be construed in connection with the charter. The charter is not repealed. We have no express indication of an intention to change or alter it in any respect, and it is only because of the repugnancy between the general purpose of the statute and the provision of the charter in favor of the right of navigation, that we are justified in saying that the defendants can under any circumstances obstruct navi-

gation. Considering both statutes, and regarding them as intended to prescribe regulations with respect to the same subject-matter, I think we are justified in believing that the legislature meant that the authority to obstruct should not be exercised, except the work required to be done was of a nature or character which could not be done properly and with reasonable dispatch, unless the draw was closed. The material words of the statute are, "shall not be liable for damages occasioned by obstructing or stopping navigation *thereby*," or, in other words, shall not be liable for damages which are necessarily occasioned by the repairs or rebuilding. The statute does not, in my opinion, authorize the defendants to close the draw, unless the work necessary to be done in making the repairs cannot be done with the draw open. The court of errors and appeals, in construing this very charter, have, through Mr. Justice Elmer, said: " Without legislative authority no one has a right to obstruct navigation; and where the law authorizes an obstruction without defining the precise nature of it, it must be restrained to what is reasonably necessary to effect the purpose intended." *Newark Plank Road Co.* v. *Elmer, 1 Stock. 789.*

The defendants attempt to show that the public convenience will suffer less by closing the draw than by leaving it open. The statute gives them no right to compare benefits and contrast injuries, and keep open or close the draw as they may decide public interest and convenience will be best promoted. Power to decide such a question should not be delegated to them. They have a right to collect tolls of those who pass over the bridge, while vessels passing through the draw have a right to pass free. Besides, which means of transportation—the highway across the stream, or the highway up and down the stream—is to be preferred, is a question which can only be decided by the legislature. The statute makes no attempt to delegate this power to the defendants, and if it did, it would most probably prove abortive. No person can be a judge in his own case. *Schroder* v. *Ehlers, 2 Vr. 44; Winans* v. *Crane, 7 Vr. 394.*

My conclusion is that the statute simply gives the defendants the right to close the draw of their bridge when it is necessary to

do work which cannot be done properly and with reasonable dispatch with the draw open. It is admitted that the work now necessary to be done can be nearly as well done with the draw open as closed. It must, therefore, be kept open. An injunction will go, enjoining the defendants from obstructing navigation.